UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RANDOLPH SMITH,

                              **Plaintiff,**

                              v.                                9:06-CV-401
                                                                   (FJS/DEP)

**GLENN GOORD, Commissioner, Department
of Correctional Services,**

                              **Defendant.**
_____

**APPEARANCES**                                      **OF COUNSEL**

**RANDOLPH SMITH**
**05-A-0232**
Great Meadow Correctional Facility
Box 51
Comstock, New York 12821
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**                **STEVEN H. SCHWARTZ, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. BACKGROUND

      Plaintiff Randolph Smith commenced this action by filing a *pro se* civil rights complaint. *See* Dkt. No. 1. In that complaint, Plaintiff, a Rastafarian, challenges the New York State Department of Corrections' policy that requires restrictive confinement of inmates who refuse to submit to a tuberculin skin test on religious grounds. *See id.*

Currently before the Court is Plaintiff's motion for injunctive relief.[1] In support of his motion, Plaintiff alleges that he refused to take a tuberculin skin test because taking that test violated his religious beliefs as a Rastafarian.[2] *See* Dkt. No. 3 at 2. Plaintiff alleges that, as a result of his refusal to submit to the tuberculin skin test, he was removed from his honor block housing and placed in restrictive confinement, i.e., TB Hold, with a loss of all privileges except for one hour of recreation per day. *See id.* at 3. Plaintiff also contends that his restrictive confinement "serves no penological interest other than to coerce [him] into taking the skin test." *See id.* Therefore, Plaintiff seeks an Order of this Court enjoining Defendant "from confining and continuing to confine [him] in TB Hold . . . [and] restoring [him] to his honor block housing status, and prison program in the industry with back pay." *See id.* at 4-5.

Defendant opposes Plaintiff's motion as moot. *See* Defendant's Memorandum of Law at 3. In support of this argument, Defendant submitted the Declaration of Linda C. Klopf, dated September 13, 2006 ("Klopf Decl."), who is the Communicable/Infectious Disease Supervisor for the New York State Department of Correctional Services, and a copy of Division of Health Services' Policy 1.18. *See* Dkt. No. 10. Ms. Klopf essentially agrees with Plaintiff that, in light of his religious beliefs, he should have been allowed to take the alternative TB test – the

---

[1] In a Memorandum-Decision and Order dated May 31, 2006, the Court briefly addressed Plaintiff's motion for injunctive relief but concluded that, "before it [could] determine whether injunctive relief is appropriate, Defendant must file a response to Plaintiff's motion." *See* Dkt. No. 6 at 2. After being served with Plaintiff's complaint, Defendant filed both an answer to Plaintiff's complaint, *see* Dkt. No. 9, and a response in opposition to Plaintiff's motion, *see* Dkt. No. 10.

[2] Plaintiff's Rastafarian beliefs prohibit him from injecting foreign substances into his body. Plaintiff alleges that the tuberculin skin test "requires that the protein of the tuberculin bacteria be injected into the body." *See* Dkt. No. 3 at 2-3.

Quantiferon blood test, together with a chest x-ray and physical examination – in lieu of the tuberculin skin test. *See* Klopf Decl. at ¶¶ 5-6. Ms. Klopf further states that, when the alternative TB test confirms that a prisoner does not have TB, the prisoner is released from TB hold to the general population. *See id.* at ¶ 7. Finally, Ms. Klopf asserts that, because of a misinterpretation of the TB testing policy at the facility level, Plaintiff was not allowed to take the alternative TB test and was placed in TB Hold.[3] *See id.* at ¶ 6. However, once the New York State Attorney General's Office[4] made her office aware of Plaintiff's situation, he was scheduled to undergo the alternative Quantiferon blood testing. *See id.*

Plaintiff filed a reply to Defendant's opposition papers, *see* Dkt. No. 15, in which he argues that his request for injunctive relief is **not moot** as a result of his release from TB Hold. He contends that he is still entitled to an injunction preventing Defendant from confining him in the future and directing Defendant to "restore [him] to his pre-confinement status." *See id.* at 5. In response to Plaintiff's reply, Defendant submitted an additional Declaration from Ms. Klopf, in which she states that Plaintiff was released from TB Hold in early October 2006 after he was given the Quantiferon blood test. *See* Declaration of Linda C. Klopf, dated October 26, 2006 ("Klopf Reply Decl."), at ¶ 3. Ms. Klopf further states that, because Plaintiff has already been cleared from TB Hold as a result of the blood test, he will not be subject to TB Hold again even

---

[3] Specifically, Ms. Klopf states that the Acting Nurse Administrator at Great Meadow Correctional Facility "had misinterpreted TB Conrol Policy #1.18, and believed that only inmates with compromised immune systems qualified for the Quantiferon blood test. Since Mr. Smith did not meet that criterion, the N.A. did not forward [Plaintiff's] request to my office. The Policy has since been clarified for the N.A., so that this situation does not reoccur." *See* Klopf Decl at ¶ 6.

[4] The New York State Attorney General's office represents Defendant Goord, who was served in this matter on August 29, 2006. *See* Dkt. No. 8.

if he refuses to take the tuberculin skin test in the future. *See* Klopf Reply Decl. at ¶ 4.

## II. DISCUSSION

The standard a court must use in considering whether to grant a request for injunctive relief is well-settled in this Circuit. As the Second Circuit noted in *Covino v. Patrissi*, 967 F.2d 73 (2d Cir. 1992), the movant "must show (1) irreparable harm and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking the injunctive relief." *Id.* at 77 (citation omitted). Moreover, "[w]hen the movant is challenging government action that is for the benefit of the public, the movant must meet the 'likelihood of success' standard.'" *Selah v. Goord*, 255 F. Supp. 2d 42, 52 (N.D.N.Y. 2003) (citations omitted).

### A.   Irreparable harm

Irreparable harm is "'the single most important prerequisite for the issuance of a preliminary injunction . . . .'" *Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp.*, 719 F.2d 42, 45 (2d Cir. 1983) (quoting 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2948 at 431 (1973)) (other citations omitted). "[T]he moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990). "The movant must demonstrate 'an injury that is neither remote nor speculative, but actual and imminent' and that cannot be remedied by an award of monetary damages." *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995) (quotation omitted). "In the absence of a showing

of irreparable harm, a motion for a preliminary injunction must be denied." *Murphy v. O'Sullivan*, No. 04 CV 4408, 2005 WL 524585, *3 (E.D.N.Y. Jan. 25, 2005) (citation omitted).

### *1. Request to enjoin Defendant from confining Plaintiff in TB Hold*

Since Plaintiff is no longer in TB Hold and the State indicates that Plaintiff will not be placed back in TB Hold even if he later refuses to take a tuberculin skin test, the Court denies this aspect of Plaintiff's motion as moot.

### *2. Request that the Court order Defendant to return Plaintiff to honors block housing and to return him to his job*

Plaintiff asks the Court to direct Defendant to return him to honors block housing and to give him back the prison job he held before he was placed in TB Hold. *See* Dkt. No. 15. A prisoner has no liberty interest in being housed in a particular facility, being designated a particular classification, or being placed in the general population. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) (holding that an inmate does not have a right to be confined to the prison of his own choosing); *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (holding that an inmate has no liberty interest in avoiding administrative segregation from the general population); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (noting that an inmate has no right to a particular security classification). Thus, with respect to his request that the Court instruct Defendant to place him in the honors block, Plaintiff has not demonstrated irreparable harm.

Turning to Plaintiff's request that Defendant reinstate him, with back pay, in his prior prison job, "New York law does not give a prisoner 'any statutory, regulatory or precedential

right to his prison job.'" *See Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) (quoting *Cooper v. Smith*, 63 N.Y.2d 615, 616, 479 N.Y.S.2d 519, 468 N.E.2d 701 (1984) (mem.); *Owens v. Coughlin*, 561 F. Supp. 426, 428 (S.D.N.Y. 1983)).

> State-created liberty interests protected by the Due Process Clause generally are those whose deprivation imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 483-84, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995). Removal from a particular prison job assignment does not satisfy this standard. It is well settled that "in New York a prisoner has no protected liberty interest in a particular job assignment." *Frazier v. Coughlin*, 81 F.3d 313, 318 (2d Cir. 1996); *Faison v. Hash*, No. 03 CV 6475P, 2004 WL 944523, at *4 (W.D.N.Y. Apr. 23, 2004); *McNeil v. Keane*, No. 95 Civ. 2595, 1998 WL 148364, at *3 (S.D.N.Y. Mar. 30, 1998) (removal from prison job prior to hearing is not due process violation because as a matter of law, a prisoner has no protected liberty interest in a particular job assignment); *Saulter v. Hanslmaier*, No. 94 Civ. 6855, 1997 WL 177887, at *3 (S.D.N.Y. Apr. 14, 1997) (refusal to return prisoner to job held prior to keeplock confinement, despite fact that misbehavior report was never filed against him and no hearing was held, did not violate due process because in New York a prisoner has no protected liberty interest in a particular job assignment). . . . The Due Process Clause does not protect against "every change in the conditions of confinement having a substantial adverse impact" on inmates, if those changes are "'within the normal limits or range of custody which the conviction has authorized the State to impose.'" *Sandin*, 515 U.S. at 478, 115 S. Ct. 2293 (quoting *Meachum v. Fano*, 427 U.S. 215, 225, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976)).

*Bussey v. Phillips*, 419 F. Supp. 2d 569, 579-80 (S.D.N.Y. 2006).

"The fact that [a] Plaintiff was not returned to the job he held or the dormitory in which he lived prior to the keeplock confinement does not change this result." *Saulter v. Hanslmaier*, No. 94 CIV. 6855, 1997 WL 177887, *3 (S.D.N.Y. Apr. 14, 1997). Since Plaintiff does not have the right to housing of his choice or a particular prison job, he has not demonstrated irreparable

harm in this regard.

Finally, Plaintiff's request for back pay does not raise an allegation of irreparable harm because, by its very terms, irreparable harm is harm that cannot be remedied by monetary damages. *See Shapiro*, 51 F.3d at 332 (noting that "[t]o establish irreparable harm, the movant must demonstrate [among other things] 'an injury . . .' that cannot be remedied by an award of monetary damages" (quotation omitted)).

## B.     Likelihood of success on the merits

As discussed above, Plaintiff has failed to demonstrate that he has been irreparably harmed by being confined in TB Hold or by not being returned to the honors block or to his prior job. "Absent any allegations of irreparable injury, the plaintiff fails to satisfy the first requirement for the issuance of injunctive relief. Because there is no showing of irreparable harm, the court need not examine the other requirements for the issuance of injunctive relief." *Inabinett v. Lantz*, No. 3:05-CV-214, 2006 WL 2583072, *3 (D. Conn. Aug. 30, 2006) (citing *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990) (party seeking injunctive relief must demonstrate irreparable harm "before other requirements for the issuance of an injunction will be considered").

### III. CONCLUSION

Accordingly, for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for injunctive relief is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties.

**IT IS SO ORDERED.**

Dated: January 27, 2006
       Syracuse, New York

                                        Frederick J. Scullin, Jr.
                                        Senior United States District Court Judge