IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

RANDOLPH SMITH,

                                  Plaintiff,

                  v.                                    Civil Action No.
                                                        9:06-CV-00401 (FJS/DEP)


GLENN GOORD,

                                  Defendant.

_____

APPEARANCES:                                 OF COUNSEL:

FOR PLAINTIFF:

RANDOLPH SMITH, *pro se*

FOR DEFENDANTS:

HON. ANDREW M. CUOMO            STEVEN H. SCHWARTZ, ESQ.
New York State Attorney General  Assistant Attorney General
Office of the Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


REPORT AND RECOMMENDATION

Plaintiff Randolph Smith, a New York State prison inmate who is

proceeding *pro se* and *in forma pauperis*, has commenced this civil rights action pursuant to 42 U.S.C. § 1983, claiming violation of his constitutionally protected right to freely exercise the religion of his choice. Plaintiff claims that he has been held in restrictive housing and stripped of all privileges as a result of his refusal, for reasons related to his religion, to submit to a mandatory tuberculosis ("TB") test.  Plaintiff argues that these consequences were the result of a policy promulgated by the Department of Correctional Services ("DOCS"), and that the defendant, as the former Commissioner of the DOCS, is liable as a result of the violation of his rights.  As relief, plaintiff seeks the entry of an injunction, as well as compensatory and punitive damages.  Plaintiff also requests that the court declare the DOCS TB testing policy unconstitutional, to that the policy imposes restrictive confinement on religious objectors to the test.

Presently before the court is a motion by defendant seeking the entry of summary judgment dismissing plaintiff's complaint on the basis that the defendant was not sufficiently involved in the development or implementation of the disputed TB testing policy to be held accountable for the constitutional deprivation alleged by the plaintiff.  For the reasons set forth below, I recommend that defendant's motion be granted.

2

I.      BACKGROUND

At the times relevant to his claims, plaintiff was a New York State

prison inmate entrusted to the custody of the DOCS, and confined within

the Great Meadow Correctional Facility ("Great Meadow"), located in

Comstock, New York.  Complaint (Dkt. No. 1) ¶ 2.  Plaintiff is a practicing

Rastafarian.  *Id.* ¶ 6.

On February 24, 2006, plaintiff was directed by members of the

medical staff at Great Meadow to submit to a Mantoux PPD skin test for

TB, in accordance with a DOCS policy requiring that all inmates be

screened "upon entry into DOCS custody and at least annually thereafter .

. ." for the disease.[1]  Complaint (Dkt. No. 1) ¶ 6; *see* Klopf Decl. (Dkt. No.

12-5) Exh. A.  The DOCS TB testing policy was promulgated and

approved by Lester N. Wright, MD, the Deputy Commissioner and Chief

Medical Officer of the DOCS, on June 21, 2004.  Wright Decl. (Dkt. No.

12-4) ¶ 4.

Because his religious tenets, as a practicing Rastafarian, dictate

against injection of foreign substances into the body, Smith refused to

---

[1]       The PPD skin test is typically administered by injecting a purified protein derivative of the bacteria that causes TB between skin layers on the subject's forearm. *Selah v. Goord*, 255 F. Supp. 2d 42, 46 (N.D.N.Y. 2003) (McAvoy, J.); *Reynolds v. Goord*, 103 F. Supp. 2d 316, 321 (S.D.N.Y. 2000); *see also* Klopf Decl. (Dkt. No. 12-5) Exh. A.

submit to the PPD test on the grounds that it violates his religious principles.  Complaint (Dkt. No. 1) ¶ 6  Plaintiff requested that as an alternative to submitting to the PPD test, he instead be permitted to undergo testing through use of a Quantiferon blood test.  *Id.*  That request was denied, however, and as a result of plaintiff's refusal of the PPD test he was removed from his honor housing and indefinitely placed in tuberculin hold – the functional equivalent of restrictive confinement.  *Id.* While on tuberculin hold, plaintiff was allowed only one hour of recreation each day, was forbidden from using the phone and, with the exception of his attorney, could not meet with visitors.  *Id.*; *see also* Klopf Decl. (Dkt. No. 12-5) Exh. A.

In order to address his situation, plaintiff sought the assistance of the coordinating chaplain at Great Meadow, an Islamic cleric, as well as the facility's Deputy Superintendent of Program Services.  Complaint (Dkt. No. 1) ¶ 6.  Plaintiff also submitted a grievance on January 12, 2006, preemptively addressing the issue, despite not yet having been asked to submit to TB testing.  *Id.*  As of the time of commencing this action, plaintiff had not received a response to his grievance.  *Id.*

Upon investigation of the matter by prison officials, it was revealed

4

that the DOCS TB policy was not properly applied in plaintiff's case.  *See*

Klopf Decl. (Dkt. No. 12-5) ¶ 6.  The DOCS TB control policy contains a

section entitled "Accommodations for Those with Religious Objections to

TB Testing," specifically addressing plaintiff's circumstances.  *Id.* ¶ 5.  That

portion of the applicable policy provides, in relevant part, that in the event

an inmate holds a sincere religious belief forbidding PPD testing, the

DOCS Chief Medical Officer, Dr. Lester Wright, may order alternative

testing of that inmate, to include a blood test in conjunction with a chest x-

ray and physical examination for the presence of TB.  *See id.*; *see also id.*

Exh. A § VII (E)(1).  Under that provision, requests from inmates at DOCS

facilities for alternative testing are routinely granted.  *Id.* ¶ *5.*

Unfortunately, the plaintiff in this case was not offered the option of

alternative testing as a result of an improper application of the policy by

the medical department at Great Meadow.  Klopf Decl. (Dkt. No. 12-5) ¶ 6.

Because of that oversight, the Central DOCS office was not apprised of

plaintiff's objection to the test.  *Id.*  Once DOCS officials were made aware

of plaintiff's objections, arrangements were made for him to receive the

Quantiferon blood test, and to be administered a chest x-ray, on or about

September 21, 2006.[2]  *Id.* ¶ 7.

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action on March 29, 2006, and has since been granted leave to proceed *in forma pauperis.*  Dkt. Nos. 1, 6.   The only defendant named in Smith's complaint is Glenn Goord, the former Commissioner of the DOCS.  Together with the filing of his complaint, plaintiff moved for the entry of a preliminary injunction, *inter alia,* removing him from TB hold and restoring all of his lost privileges.  Dkt. No. 3.  That motion was denied by memorandum-decision and order issued by Senior District Judge Frederick J. Scullin, Jr. on January 27, 2007, based principally upon the court's finding that because by then plaintiff had been administered the requested, alternative test and removed from TB hold, he was unable to establish that he would suffer ongoing irreparable harm absent the entry of an injunction.  Dkt. No. 21.

On September 28, 2006 defendant moved seeking summary judgment dismissing plaintiff's complaint.  Dkt. No. 12.  In his motion,

---

[2]      From papers more recently submitted and included within the record now before the court, it appears that plaintiff did in fact undergo the alternative testing, as scheduled, and that as a consequence he was released from TB hold in early October of 2006.  *See* Klopf Reply Decl. (Dkt. No. 17) ¶ 3.  It also appears that because plaintiff has been cleared from TB hold as a result of the blood test, he will not be subject to TB hold again if he refuses in the future to take the tuberculin skin test.  *Id.* ¶ 4.

defendant argues that because plaintiff's complaint stems from a
misapplication of the DOCS TB testing policy at Green Meadow, and in
any event since he was not involved in the promulgation of that policy,
plaintiff cannot establish his personal involvement in the constitutional
violation forming the basis for his complaint.  *Id.*  Plaintiff has since
responded, arguing that defendant is responsible for operation of the
DOCS and its various policies and practices, and in any event should
have been personally aware of plaintiff's circumstances based on letters
sent by Smith to the Commissioner.  Dkt. No. 20.

Defendant's motion is now ripe for determination, and has been
referred to me for the issuance of a report and recommendation pursuant
to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule
72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.     Summary Judgment Standard

_____Defendants' motion is brought pursuant to Rule 56 of the Federal
Rules of Civil Procedure, which governs the entry of summary judgment.
Under that provision, summary judgment is warranted when "the
pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

8

When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

     B.   Personal Involvement

     The primary thrust of defendant's motion challenges the sufficiency of plaintiff's allegations with regard to personal involvement of former Commissioner Goord in the constitutional violation asserted.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

It appears that plaintiff may be predicating his claim of liability in this case on the defendant's position as the ultimate supervisor of the agency responsible for the alleged violation.[3]  A supervisor, however, cannot be liable for damages under section 1983 solely by virtue of being a

---

[3]    Plaintiff alleges, for example, that as the former Commissioner, defendant Goord was "the only one authorized to promulgate and implement rules, regulations, and policies."  *See* Plaintiff's Local Rule 7.1(a)(3) Statement (Dkt. No. 20) ¶ 3.

supervisor – there is no *respondeat superior* liability under section 1983.
*Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at
501.  A supervisory official can, however, be liable in one of several ways:
1) the supervisor may have directly participated in the challenged conduct;
2) the supervisor, after learning of the violation through a report or appeal,
may have failed to remedy the wrong; 3) the supervisor may have created
or allowed to continue a policy or custom under which unconstitutional
practices occurred; 4) the supervisor may have been grossly negligent in
managing the subordinates who caused the unlawful event; or 5) the
supervisor may have failed to act on information indicating that
unconstitutional acts were occurring.  *Iqbal v. Hasty*, __ F.3d __, 2007 WL
1717803, at *6 (2d Cir. June 14, 2007); *see also Richardson*, 347 F.3d at
435; *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-24 (2d
Cir. 1986).

Accepting as true each of plaintiff's allegations in this instance, he
nonetheless cannot establish the requisite, tangible nexus between
defendant Goord's conduct and the violations asserted.  As the Second
Circuit has observed, under analogous circumstances, "it is not enough for
the defendant simply to be a 'policy maker' at the time unconstitutional

events occur." *Cuoco v. Moritsugu*, 222 F.3d 99, 109 (2d Cir. 2000).  This

is particularly true of supervisors who, like former Commissioner Goord,

lack medical expertise and thus are not capable of determining whether or

not a policy will protect or jeopardize an inmate's health.  *See Brock v.*

*Wright*, 315 F.3d 158, 164 (2d Cir. 2003).  In this instance, defendant

deferred his authority and responsibility in protecting the well-being of

inmates to a medical professional, Dr. Lester Wright, Deputy

Commissioner and Chief Medical Officer for DOCS.  It is Dr. Wright's

signature that appears on the policy and, by all appearances, Dr. Wright is

the one responsible for administering the policy, not Goord.

     Even assuming that the former Commissioner could be held

accountable for creation and implementation of the TB testing policy in

issue, plaintiff's claims stem not from that policy, which includes the very

religious objection exception invoked by the plaintiff, but rather the failure

of officials at Green Meadow to properly implement that policy and its

prescribed, religious exception.  Under these circumstances, there is an

insufficient tangible connection between former Commissioner Goord's

actions and plaintiff's alleged injuries.[4]  *See, e.g.*, *Gill v. Mooney*, 824 F.2d

---

     [4]     In support of his claim that the TB holds for religious objectors allegedly
contained in DOCS Policy #1.18 is unconstitutional, plaintiff cites *Jolly v. Coughlin*, 76

192, 196 (2d Cir. 1987); *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.

1985).

In addition to relying upon his position as the former Commissioner,

plaintiff also asserts personal involvement on the part of defendant Goord

based upon two letters sent to him by Smith informing him of plaintiff's

circumstances.  This ground for imputing liability to the former

Commissioner is similarly unavailing, since the mere sending of letters or

grievances, particularly those which go unanswered, is an insufficient

basis upon which to find personal involvement in a constitutional

deprivation.  *See Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y.

2002) ("It is well-established that an allegation that an official ignored a

_____

F.3d 468 (2d Cir. 1996).  That case, however, is easily distinguishable from the circumstances now presented.  In *Jolly*, the plaintiff was placed in medical keeplock for three years after refusing to submit to a PPD test on the grounds of religious opposition.  Addressing his constitutional claims, the Second Circuit ruled that the conditions endured by the plaintiff while in medical keeplock violated the Eighth Amendment, and that DOCS' purpose of deterring others from refusing to take the test was not a legitimate one.  It should be noted, moreover, that since *Jolly*, the DOCS' TB policy has undergone much transformation and the TB hold under which Smith was placed was not the same *per se* unconstitutional confinement imposed upon the plaintiff inmate in *Jolly*.

Plaintiff also cites *Reynolds v. Goord*, 103 F. Supp. 2d 316 (S.D.N.Y. 2000) and *Selah v. Goord*, 255 F. Supp. 2d 42 (N.D.N.Y. 2003), in support of his claim.  Those cases also arose under a different DOCS TB Policy than that implicated in this action.  The current version, dated June 21, 2004, supersedes the previous iterations of the policy.  Consequently, those cases do not establish that the current edition of the TB Policy is unconstitutional simply because courts have found elements of previous iterations unconstitutional, as plaintiff seems to allege.

13

prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold the official liable for the alleged violation.") (quotations omitted); *Murray v. Coughlin*, No. 91-CV-0476E(H), 1995 WL 128968, at *6 (W.D.N.Y. Mar. 15, 1995); *see also Lyerly v. Phillips*, No. 04 Civ. 3904, 2005 WL 1802972, at *7 (S.D.N.Y. July 29, 2005); *Liner v. Goord*, 310 F. Supp. 2d 550, 555 (W.D.N.Y. 2004). Accordingly, the fact that plaintiff sent a letter to Commissioner Goord, and another to a Deputy DOCS Commissioner, absent additional facts not now presented, is insufficient to establish defendant's personal involvement in the constitutional violations alleged.

IV.    SUMMARY AND RECOMMENDATION

Plaintiff's complaint stems from the misapplication by local prison officials at Green Meadow of a DOCS TB policy which included a provision for handling religious objections such as those voiced by the plaintiff. Because the record is lacking in any evidence that the defendant, as the former DOCS Commissioner, actively participated in or endorsed the potential constitutional deprivation which resulted from the actions of local prison officials in not providing the plaintiff with alternative testing under the policy, he is entitled to the entry of summary judgment dismissing

plaintiff's claims based upon the lack of personal involvement.  It is therefore hereby

RECOMMENDED, that defendant's motion for summary judgment (Dkt. 12) be GRANTED, and that plaintiff's complaint be DISMISSED in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993); and it is further

ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:     July 30, 2007
           Syracuse, NY


David E. Peebles
U.S. Magistrate Judge


15