UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

9:06-cv-00401

FIRST AMENDED COMPLAINT
AND JURY DEMAND

---

RANDOLPH SMITH,
Plaintiff

V.

DR. LESTER WRIGHT, in his capacity as Deputy Commissioner for Heath Services for DOCS and in his individual capacity;

DR. PAULANO, in his capacity as Chief Medical Officer for Great Meadows Correctional Facility and in his individual capacity;

DR. SILVERBERG, in his capacity of plaintiff's primary care provider at Great Meadows Correctional Facility and in his individual capacity;

JANE DOE, in her capacity as Acting Nurse Administrator at Great Meadows Correctional Facility and in her individual capacity;

JOHN DOE, in his capacity as DOCS Director of Ministerial Services and in his individual capacity.

DEFENDANTS.



---

Plaintiff, Randolph Smith, on behalf of himself for his complaint alleges as follows:

JURISDICTION AND VENUE

1. This action arises under the 1st, 8th, & 14th Amendments to the United States Constitution; Religious Land Use and Institutional Persons Act (RLUIPA); and the Civil

Rights of 1871, 42 U.S.C. Section 1983.

2. The Jurisdiction of this Court is predicated upon 28 U.S.C. Sections 1331, 1343(A)(3)(4) and 2201

3. Venue is lodged in this Court pursuant to 28 U.S.C. Sections 1391(b)

## JURY DEMAND

4. Plaintiff demand trial by Jury in this action.

## PARTIES

### Plaintiff

5. Plaintiff Randolph Smith, is a 40 years old Rastafarian inmate; whom moved by his immediate concern of how Rastafarian inmate were being effectively reduced to medical keeplock status for refusing (on religious grounds) to submit to a screening test for "latent" Tuberculosis by DOCS medical personnel, and/or how their religious objections to said medical procedure were being unreasonably overlooked; exercised his right to be heard through grievance channels in order to request the alternative procedures available to be test for Tuberculosis, and in an effort to avoid a medical keeplock.

### Defendants

6. Defendant Lester Wright, is the Deputy Commissioner for Health Services of DOCS and/or DOCS Chief Medical Officer since July 1995, and is responsible for the developing DOCS current TB Policy at tissue in this action("Policy

Section 1.18")and as such, has been and continues to be responsible for enforcing and ensuring that DOCS medical staff in relation thereto. In addition Dr. Wright has been, and continues to be responsible for enforcing and ensuring that DOCS decisions in connection to the PPD Screening Program and medical keeplock policy at issue in this action. Defendant Wright is sued in his individual and official capacity.

7. John Doe, was DOCS Director for Ministerial Services at all times relevant to this action. Defendant John Doe was responsible to investigate plaintiff religious objection to the PPD test, including causing a personal interview to be made with plaintiff to ascertain the basis and sincerity of plaintiff's religious objection, and notify the Chief Medical Officer of the outcome of his investigation into plaintiff's religious objection. Defendant John Doe is sued in his individual and official capacity.

8. Defendant Dr. Paulano, is the head Doctor at Great Meadows Correctional Facility. At all times relevant to this action, defendants Paulano has been and continues to be responsible for the supervision, training, policy, practice and implementation and conduct of all the medical staff under him in the overall operation of Great Meadows Correctional Facility Hospital. Defendant Paulano is sued in his individual and official capacity.

9. Defendant Dr. Silverberg was plaintiff's primary care provider during the time relevant to this action and was responsible for plaintiff overall medical needs in harmony with his Hippocratic Oath and the State and Federal Constitutions. At all times relevant to this action defendant Silverberg was responsible to provide,

upon plaintiff's request, the alternative procedures to test the plaintiff for Tuberculosis. Dr. Silverberg is sued in his individual and official capacity.

10. Defendant John/Jane Doe was the acting Nurse Administrator at Great Meadows Correctional Facility at all times relevant to this action. Defendant John/Jane Doe was responsible to follow and be fully trained and informed in connection with the practice and/or mechanics of the PPD Screening Program and medical keeplock police question, and /or for ensuring compliance with DOCS TB Policy at Great Meadows and official capacity.

STATEMENT OF FACTS

11. Plaintiff is a practicing Rastafarian whose religious tenets prohibit the injecting of foreign substances into the body which is the Holy Temple of the Living God, JAH. In an effort to avoid being reduced to "medical keeplock" status as other Rastafarians within DOCS were being reduced to as a result of refusing to be subject to TB PPD Screening test, on January 12th, 2006 plaintiff objected to the PPD Screening test on religious grounds through grievance channels, and requested the alternative procedures to be tested for Tuberculosis.

12. On January 25th, 2006 plaintiff was called out to the facility's clinic for TB Screening testing, to which he refused on religious grounds, as stated above, and requested the alternative testing procedure to be tested for TB; but the nurse directed him to return to his program assignment.

13. On February 24th, 2006, plaintiff was once again called out to the clinic for TB testing; which he refused on religious grounds and requested the alternative means to be tested for the second time. Although, X-Rays were taken, plaintiff

was immediately placed on a TB hold (medical keeplock).

14. On February 26th, 2006, plaintiff submitted a formal complaint to Commissioner Goord giving him notice of plaintiff's medical keeplock status for refusing PPD Screening test on religious grounds, and that his January 12th, 2006, grievance had not been heard up to that date in time.

15. On February 28th, 2006, plaintiff filed a second grievance objecting to PPD Screening test and medical keeplock status on religious grounds and requested the alternative procedure for the testing.

16. On March 1st 2006, plaintiff submitted a complaint to Stephen Bernardi, Deputy Commissioner for Policy and Compliance, informing him of the religious violation and breakdown of the grievance process at Great Meadows Correctional Facility.

17. On March 23rd, 2006 plaintiff received an interdepartmental communication from Acting Superintendent Potter in conjunction with a response from the grievance office with the decisions of the two grievances previously filed.

18. On March 24th, 2006, plaintiff was taken on first visit to clinic since the start of the medical keeplock for a checkup with Dr. SILVERBERG.

19. On March 28th, 2006, plaintiff sent a second complaint to Commissioner Goord objecting to the manner Health Policy Section 1.18 was being recklessly disregarded by Great Meadows correctional Medical Staff despite his religious objections and requested a blood test. Great Meadows medical Staff, however, insisted on disregarding the plain and unambiguous terms of Sections VII (E)(1)(2) of the Health Policy at issues.

20. On March 29th, 2006, plaintiff filed his civil complaint with this Court and sought an injection in connection to the TB hold, in that it was imposed upon him as a coercive measure and/or a form of punishment in order to force plaintiff to forfeit and/or waive his religious observances and objection regarding the PPD skin test.

21. On March 29th, 2006, plaintiff finally received the Superintendent's answer to his January 12th, 2006 grievance, clearly reflecting the breakdown and/or reckless indifference with which plaintiff grievance process was handled, and the Superintendent's Office insistence in keeping plaintiff for years on medical keeplock, clearly reflecting the punitive nature of the procedure.

22. On May 3rd, 2006, plaintiff received an unanimous decision from the Central Office Review Committee denying grievances GM-39910-06 / 40152-06, noting understanding that plaintiff may refuse to be tested based on religious beliefs, but effectively denying his request for the alternative measures or procedures to be test for Tuberculosis, while alluding to continue subjecting plaintiff to the punitive nature of the medical keeplock status, allegedly as precautionary measures to protect facility staff and inmates in the general population from potential exposure.

23. On May 4th, 2006, plaintiff complained to defendant Goord regarding the unreasonableness of the May 3rd, 2006 Central Office Review Committee's denial of the plaintiff's request of the Quarantine Blood Test as an alternative to the PPD skin test, contrary to Health Policy Section 1.18, in light of his religious objections, as he had specifically relied upon two Federal Courts' precedent, which have found that keeping prisoners confined for prolong of time for

exercising their religious beliefs in connection to TB testing to be Unconstitutional.

24. On May 12th, 2006 plaintiff was taken to the clinic for a second X-Ray, but the X-Ray technician, upon inspecting the X-ray taken February 24th, 2006, found unnecessary to take additional X-Rays.

25. On May 24th, 2006, plaintiff was approached by the company officer and asked if he was willing to take the TB Test, while producing and handing plaintiff a refusal form, which plaintiff signed, while asking the officer to relate to the medical officer who had handed him the refusal form that plaintiff wanted to be tested by the alternative procedures available to test an individual for Tuberculosis.

26. On August 1st, 2006, plaintiff sent a complaint to defendant Wright and put him on notice respecting plaintiff medical hold since February 24th, 2006 for objecting, on religious grounds, through grievance channels, for the alternative procedures to be tested by the alternative procedures available to test an individual for Tuberculosis, when the TB Screening test infringed upon religious beliefs, was being utterly disregarded, in violation of Health Policy #1.18, and Federally secured rights and law, while invoking defendant's Wrights immediate intervention and corrective action.

27. On August 22nd, 2006, plaintiff received a letter from Steven Van Buren, Regional Health Services Administrator, after having been designated by Dr. Wright to respond to plaintiff's August 1st, 2006, letter to Dr. Wright, in which he denied plaintiff's claim of lack of compliance with Health Policy No. 1.18 in the

part of the Great Meadows Correctional Facility's Medical Staff, while not only recklessly disregarding and overlooking plaintiff request for the alternative procedures to be tested for Tuberculosis, but utterly overlooking or disregarding the literal terms of Health Policy 1.18, Section VII(E)(1-4) in a manner inconsistent with " fundamental fairness"

28. On August 22nd, 2006, plaintiff filed a formal complaint against Great meadows Medical Staff for lack of compliance with Health Services Policy section 1.18 VII(E)(1-4); and requested to be released from Tuberculin Hold. Setting forth the steps he had taken to bring to the attention of Great Meadows Medical Staff his religious objection; to the TB Screening test, his request for the alternative procedures for TB testing in light of his religious objection; and in light he had been already given an X-Ray and all he needed was the Quanteteron Blood Test. Plaintiff, while fully relying upon the terms and authority of Health Policy Section 1.18 protested to the Great Meadows Medical Staff lack of compliance with said revised Health policy (Policy 1.18); and concluded that in light of the X-Ray evidence it was clear that he did not pose any risk to general inmate population, Mr. Bernard (Director of Policy and Compliance) should have directed the Great Meadows Medical Staff to release him from medical keeplock status.

29. On September 11th, 2006, plaintiff received correspondence from Steven H. Schwartz, Assistant Attorney General, which included a declaration is of special interest in this action, as in harmony with plaintiff's complaint to Mr. Bernardi, she declared that in accord with paragraph VII(E)(I)(2) of Policy #1.18 defendant

Wright "may order in the alternative, a blood test in conjunction with a chest X-Ray and physical examination for the presence of TB, for sincerely held religious belief," and proceeded to declare that, "[A]s a matter of course, when Health Services receives a request by an inmate for the alternative test." Although Ms. Klopf's declaration points to the acting nurse administrator misinterpretation of the control Policy #1.18, as the source for the obvious lack of compliance with the Health Policy and Compliance Bernardi, in view of their substance and aim, should have been immediately forward to the Health Service office, and/or to defendant Wright's office. Particularly, when the policy at issue (Section 1.18(E)(1)(2) is ten years old and the Great meadows defendants should have adequately trained respecting its application.

30. On September 12th, 2006, plaintiff was called to the Clinic and a second X-ray was taken. It should be noted that the initial set of X-Rays were taken on February 24th, 2006, and that on May 12th, 2006 the X-ray technician declined to take the set of X-Rays as after inspecting the original set he concluded there was no need for additional X-Rays for the purpose the X-Ray were needed.

31. On September 14th, 2006, plaintiff was taken to the clinic to see defendants Silverberg to discuss the alternative test.

32. On September 20th, 2006, the alternative blood test was taken.

33. On October 6th, 2006, plaintiff was called out to the clinic and presented the results of the Quanteferon Blood Test and ordered released from TB Hold by Dr. Paulano, at which time Dr. Paulano informed plaintiff that next year the procedure would be repeated.

34. On October 31st, 2006, plaintiff received a second declaration from Ms. Linda Klopf, regional Disease and Control Supervisor, advising plaintiff that Dr. Paulano would be re-educated on DOCS TB Policy; once again confirming that the Great Meadows Correctional Facility's Medical Staff labored under an erroneous misinterpretation of Health Policy Section 1.18 VII(E)(1)(2), and while under said erroneous construction of the Policy, unreasonably disregarded plaintiff's request for the alternative Quanteteron Blood test he had requested on January 12th, 2006, immediately after the first set of X-Rays were taken in February 24th, 2006, following plaintiff second refusal of the PPD Screening Test on religious grounds

35. Through this action of plaintiff challenges DOCS Health Services Policy No. 1.18 Section VII as unconstitutional, in that its draftsmanship and language compel restriction similar in severity to those of disciplinary disposition for violation of DOCS Rules and Regulations for Tier III infractions, but its process or procedures, unlike disciplinary proceedings, failed to protect plaintiff in this matter form and uncalled for seven months Cell Restriction in clear violation of the policy itself before DOCS Personnel recognized and honored his religious belief.

36. D.O.C.S Health services policy number 1.18 VII A.(2) states in relevant parts:
    1. "The inmate is to be told that based on his religious objection to the test he is being placed in Tuberculosis Hold while a determination is made by the Department of the legitimacy of the objection, that determination will be made within sixty days and the inmate will be advised of the determination."
    2. "Notification of the religious-based refusal must be made within three days by the facility's health service staff to the infection Control Unity

      and to the Departments Director of Ministerial Services in Central Office.

3. The Department's Director of Ministerial Services will investigate the state religious objection to the PPD test, including causing a personal interview to be mode with the inmate, to ascertain the basis and sincerity of the stated religious objection.
4. Within Forty five days of notification, the directors of ministerial services will inform the Department's Chief medical Officer of the outcome of the investigation of the inmates stated religious objection.
5. The Department's Chief medical Officer will evaluate the situation including the results of the investigation of the stated religious objection, determine what accommodation, if any, is possible and will inform the facility and the inmate within sixty days of the commencement of the Tuberculin Hold.
   1. If it is determined that the inmate has a sincerely held religious beliefs that forbids the PPD testing, the Department's Chief Medical Officer may order that, as accommodation to the religious belief, the inmate take a blood test for diagnosing latent Mycobacterium Tuberculosis Infection (LTBI) in conjunction with a chest X-Ray and physical examination for the presence of Tuberculosis disease in lieu of the PPD skin test.
   2. "The blood test is to be performed as expeditiously as possible." The inmate may be released from Tuberculin Hold when the results of the Blood Test, Chest X-Rays and physical Examination do not indicate that the inmate has LTBI.

37. Plaintiff asserts that a through reading of the policy itself, in light of plaintiff cell restriction despite the X-Ray evidence reflection that he did not have active Tuberculosis and did not pose any potential risk to the general population illustrate that the policy's procedures are even inconsistent with the minimum due process requirement afforded with the minimum due process requirement afforded prisoners for the most serious disciplinary matters calling for the very form of restrictions plaintiff was subject to without due process of law.

38. This can b e illustrated by section VIII(B) which reasonably requires notification of the religious-base refusal within three (3a0 days by the facility's service staff to

the Infection Control Unit and the Department's Director of Ministerial Services in Central Office, but the determination by the Department of the legitimacy of the objection takes sixty days, while the religious objection must remain under restrictions identical to punitive disciplinary restriction, for adhering to his religious belief.

<u>First Cause Of Action</u>

<u>42 U.S.C. Section 1983; First and Eighth Amendment</u>

39. Plaintiff repeats and realleges the forgoing paragraphs as if the same where fully set forth at length herein.

40. By implanting promulgating and enforcing and/or effectuating a policy, practice and custom pursuant to which plaintiff was forced into conditions of restrictions identical to the restrictions imposed upon inmates after being found guilty of the most serious misconduct (Tier III Infractions) for refusing a TB Screening Test on religious grounds, the defendants not only violated plaintiff's constitutional right to the free exercise of the religious beliefs under the First Amendment to the United States Constitution and religious Land Use and Institutional Act (RLUIPA), but further violated his rights under the Eighth Amendment to be free from Cruel and Unusual Punishment.

41. Plaintiff's cell restriction for over seven months for exercising a religious belief, and/or for refusing a TB Screening Test on religious grounds essentially similar to a punitive restrictions; was violative of plaintiff's rights under the First and Eighth Amendment to the United States Constitution.

Second Cause of Action

42 U.S.C. Section 1983; Fourteenth Amendment

42. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

43. At all relevant times of this action, defendants owed an affirmative duty to protest the health and safety of individuals whose freedom to act has been restrained through incarceration.

44. By engaging in the above described act and omissions, and/or by arbitrarily and capriciously overlooking the plain terms and language of the Health Policy issue the Great Meadows Correctional Facility defendants violated plaintiff's substantive due process right as guaranteed by 14th Amendment to the Constitution of the United States.

45. Defendants acted under pretense and color of state Law and in their individual and Official Capacities and within the scope of their employment.

46. As the direct and proximate result of the arbitrary and capricious conduct and/or abuse of authority detailed above, plaintiff suffered the damages herein before alleged.

Relief Requested

WHEREFORE, Plaintiff requests the following relief:

1. A Judgment declaring that the defendants have committed the violations of law alleged in this action;
2. Compensatory damages against all defendants in the amount of Seven hundred Fifty Thousand Dollars (375,000);

3. Punitive damages against all defendants in the amount of One Million Five Hundred Thousand Dollars ($1,500.00);
4. An order awarding disbursement, costs, Attorneys fees, after one is appointed, and;
5. Such other and further relief that may be just and equitable.
6.

DATED: SEPTEMBER 15, 2010
BRONX, NEW YORK, 10455

Respectfully Submitted,

Randolph Smith
810 East 152nd Street, Apt. 616, Bronx, NY
Tel. 646-732-7831

- 14 -